Good morning, Your Honors. Mark Vanderhout on behalf of Ms. Rosa-Robles along with Beth Feinberg from my office. This case involves a 48-year-old, 30-year-long permanent resident of the United States who the government contends can be permanently separated from her family for her one drug-related offense when, despite the fact that when she committed her crime, she was eligible for 212C relief, which would have allowed her to remain there. I'm sorry, Your Honor. Kennedy What does that have to do with anything? Verrilli, Jr. Well, the issue is whether when she pleaded guilty, was she eligible for that relief. Verrilli, Jr. No, Your Honor, I don't believe so, and let me try to explain why. Kennedy Does she have a reasonable expectation of discretion by the AG the moment before she decides to conspire to distribute drugs? Verrilli, Jr. Not at all, Your Honor, and we don't make that argument. We do not make the argument. The government claims that it's absurd to think that someone, you know, when they go to commit a crime, they're concerned, oh, maybe I can get 212C relief. Kennedy We agree on that. Verrilli, Jr. We agree on that, too. We agree it's absurd. We don't make that argument. And that's what the Supreme Court addressed in the Landgraf case. Supreme Court, in that case, Mr. Williams, who was the harasser in that case, was sued, and the issue was whether or not subsequent to that, when Congress enacted the amendments to the 1991 Civil Rights Act, could punitive damages in a jury trial be applied to his unlawful conduct. And what the Supreme Court said in Landgraf is, we don't assert here that there's settled expectations. That's only one criteria. It would be very attenuated for Mr. Williams or the company to argue that he, when he engaged in that harassment, he thought, well, I can go do this because, look, if I get caught, I won't have punitive damages here. And the Supreme Court said that's not the issue. The issue is, even if the conduct's illegal at the time, even if it's morally reprehensible, which they said it was in that situation, if the change in law applies new consequences or liabilities to the conduct, the time it's engaged in, that is the inquiry. And unless Congress says, we want it to apply to that past conduct, then it can't apply. Now, the Supreme Court's already addressed, and there's no dispute here, that repeal should apply to past conduct. So the question is, does the new change in law apply new consequences to the past conduct? And that's what Landgraf looked into and said it does and it can't be applied. And that's what this is about here, too. In neither case do settled expectations or reliance required. And I refer the Court specifically to footnote 35 in Landgraf, where the Court discusses that issue in particular. In all the cases that address this issue, say, as long as the statute applies new consequences to the past conduct, then it can't be done. Now, let me refer the Court to Hughes. And this Court's subsequent decision based on Hughes in Scott v. Booz, which Judge Hawkins wrote. In those cases, the question was whether, in Hughes, the question was whether or not the new change in law, which allowed an individual to bring a suit without having to show that government was aware at the time could apply the past conduct. And Hughes said, no, that's not fair. That's not fair to the individual who engaged in the fraud. But nowhere was there a claim that, well, the person, when they engaged in the fraud, thought, well, they couldn't be subjected to that claim. Similarly, in Judge Hawkins' decision in Scott v. Booz, the issue was whether or not the private securities litigation reform act changes that eliminated RICO claim for people who engaged in securities fraud could be applied retroactively to prevent a plaintiff from bringing a suit. And, again, the Court only looked at the conduct in that case. Now, there are a lot of cases, a lot of cases, and the government cites them in other circuits and cites some dicta in this circuit that says what Your Honor asked, you know, isn't it absurd to think you rely on those, on the presence of 212C relief? But in none of those claims, none of those cases does the Court address, nor did the petitioners make the argument that we make here, that you look only at conduct. They talked about how you've got to look, they rely, et cetera. And that's what those cases address. None of them address the issue that is made by Petitioner in this case. So she has a vested right in the discretion of the AG if she commits her crime before Section 440D is enacted. What she has, Your Honor, is the right to have her conduct assessed under the law at the time it's engaged in. Unless Congress explicitly says otherwise.  Unless Congress says that. Unless Congress explicitly says that, otherwise. To answer another fact, perhaps inconvenient, she pleaded guilty straight up to the indictment, right? She pleaded guilty, correct. Admitted all the facts of the indictment. I'm assuming so. I don't remember precisely, but let's assume so. The conspiracy is alleged to continue until May 18th, 1996. But her only her specific, her specific acts, Your Honor. She pleaded guilty to conspiracy. But her acts that she engaged in, which were alleged, and that's not disputed in the record, Your Honor, occurred between up to April 13th, 1996. Yeah. But she pleaded guilty to being a conspirator in a conspiracy which lasted longer and beyond the date of April 23rd, 1996. But, Your Honor. But you're saying that that's an irrelevant fact. You look at her conduct. Correct, Your Honor. You look at her conduct. And that's what all the cases say. You look at the conduct of the individual, and when Mr. Williams engaged in the harassment, that's what you look at. The time he harassed that individual, what was the law in effect? My notes show that she was engaged from April 12th to 16th. Is that right, or is that? I believe that's correct, Your Honor. It was mid-April. It was prior to the change in the law. It was about a week period, a little less, during that time. And I can get you the precise dates, but I believe it was around April 12th to 16th. Correct. How do you distinguish Calava? Calava, Your Honor, which the Court's familiar with, dealt with a different issue. In there, Calava did not need to have a conviction. I'm sorry. I'm sorry. Calava, you're correct. Calava was charged with the activity that engaged in and was deportable for the offense once the crime was committed. Conduct. It was conduct, Your Honor. It was conduct.  And we would assert, Your Honor, that when the Court looked at Calava and looked at the reliance issue, that it was looking at cases where it was not argued that the conduct in question was what was to be looked at in those other cases and relied on those cases to say that. For instance, St. Cyr and other cases which did not address the issue which we raise here, which Hughes and Landgraf specifically say that you look at the conduct as it applies at that time. And in Calava, Your Honor, the individual was deportable for the offense when they committed the offense, as the Court said, and therefore did not need a conviction. Here it subsequently did require a conviction. And, Your Honor, we believe that Calava, the Court believes that Calava is controlling. Then, obviously, this would have to go en banc. We don't think Calava can be reconciled with the Court's prior decision in Scott v. Booz, nor can it reconcile with the Supreme Court's decisions. Have you looked at the Cordes case written by Judge Ferguson? Yes, Your Honor. We submitted a 28-J on that. What were the different classes of aliens which it was irrational to distinguish? I took a quick look at it, and I wasn't quite sure which classes of aliens were distinguishable. The distinguishing classes were individuals who were deportable at the time they pled guilty and individuals who later became deportable. That was the thing. And we cited that to the Court. And I guess I should save my remaining 30 seconds if I can. May it please the Court? I think even higher with your mic.  Good morning. Owen Mardikin for the Respondent at Police. The appellant's admission at the outset of oral argument today that Ms. Rosa Robles, of course, had no reasonable expectation, settled expectation of obtaining 212C relief when she was deciding whether to commit this crime really ends this case. Everything that is argued after that is based respectfully on a misreading of Landgraf, a misreading of St. Cyr, and a misreading of the cases that follow it. The reason to focus on all of that authority in turn is that those cases don't focus on conduct versus conviction, conduct versus plea. They focus exactly on what is objectively reasonable. That's what the Court says in Landgraf when it tells courts. The Court exercises its sound judgment in deciding on retroactivity by looking at what is the reasonable reliance, what is the settled expectation. That is absolutely the test in all of those cases. In Landgraf, footnote 35, the exact part of the opinion that appellant is discussing, the focus is not on the harasser. It's not focused on the employee who went out and harassed his coworkers. The focus is on the employer, what the employer's settled expectations were at that point. And the reason is that in Landgraf, the state of the law prior to the change was that the employer could avoid responding at superior liability by showing that it had a program of avoiding sexual harassment. After that change in the law, the employer was liable for damages. So the Court says clearly that comes into an employer's calculus in deciding on whether it should have a program to avoid sexual harassment. The Court did not talk at all about what the harasser's expectations were. That would be clearly unreasonable. Next, and of course the Landgraf case talks about reasonable expectations. St. Cyr. St. Cyr, the reason that the Court finds retroactivity back to the plea of guilty, is based on a mountain of evidence that it is common practice for aliens to consider 212c relief when they're talking about their plea. They talk about it in open court. It's obvious to everyone that that's a key factor in the decision-making process. So the Court is focusing very clearly on reasonable expectations. Well, what about the argument, for example, when someone is sentenced, they get the benefit or used to get the benefit of the guidelines at the time of the crime or at the time of sentencing, whichever is more favorable. That's kind of the argument that's being made here. It is, but the test is a little bit different, because the Court's focus in following what the Supreme Court did in Landgraf and St. Cyr is on where do we decide the expectations become settled. When is it? The rule in Landgraf isn't that you always go back to the conduct. I think that's what the appellant would like, but that's not the rule. The rule is does the Court go back to the point at which the expectations become reasonably settled. So the Court, and that's why in St. Cyr there's such a discussion of how this is a common practice. In fact, in this Court's decision last week in U.S. v. Gonzales, common practice is the phrase that this Court used in distinguishing St. Cyr from that case. In St. Cyr it was a common practice to discuss 212C relief. It was not to discuss 212H relief. In Landgraf, the focus is the same. In Cordes, sorry, not Cordes, but the other case that the appellant brought to the Court's attention, in a 28J letter. The Court's focus, again, is what the reasonable expectations are when it holds that allowing this new cause of action by owner-operators would, of course, reasonably entitle them or reasonably cause them to plan to sue because of their profit motive. Owners-operators would likely be motivated by their own potential financial gain, increasing liability for defendants. So the Court is always focused on reasonable expectations. It's not focused on conduct, per se. Certainly in the sentencing context, we don't look to reasonable expectations. We just say it's not fair to impose a higher sentence when at the time the crime was committed the sentence was less. Now, how do we distinguish that rationale in our heads? Well, at the outset, Your Honor, I'm not quite as familiar with the sentencing context in those cases. So I can't say whether the Court is looking at, in the context of fairness, what is reasonably fair. But in this context, when the Court looks at what is fair notice, when the Court examines fairness, the Court looks at what is objectively reasonable. So when appellant discusses at length, it's not a detrimental reliance test. That's true from a subjective perspective. We would never ask an alien, prove that you thought about this. And we couldn't ask the government to say, disprove that she thought about it. But it is an objective reliance test. And the Supreme Court doesn't shy away from using the word reliance in the context of reasonable or objective reliance. So as the Court and the appellants discussed, there is a reason why every single circuit court that has addressed this argument in a published opinion has rejected it, and why this Court, in dicta in two cases, has actually quoted those cases with approval, although it hasn't addressed the issue directly. What is amiss in this argument is a focus on the wrong test. And when the correct test is applied, all of those precedents fall into line and compel what we believe is the proper conclusion, which is that retroactivity in this context can only go to the plea and not all the way back to the contemplation of criminal conduct. Ginsburg. Well, you do comment on the dates upon which the conspiracy is held to. Yes. And not – I have the indictment. I don't have those dates memorized. But I'm willing to concede that the conduct preceded that for a particular portion of the conduct preceded. On page 21 of the transcript, I mean of the excerpt of record, beginning at a time unknown to the grand jury but no later than January 25, 1996, and continuing thereafter up to and including May 18, 1996. Yes. So, and I would agree that if that refers, and it does refer apparently to all of the defendants, that it discusses conduct that continues through the effective date of the AEDPA. Now, when it discusses her individual conduct, it may talk about a more narrow time period. But really, that's a sufficient but not a necessary ground for this Court to find in the government's favor, because in a broader sense, even if that conduct had terminated well prior to the April date, effective date of the statute, based on all the controlling authority and, frankly, any reasonable view of what expectations, settled expectations are, there could be no 212C1. Well, I want to pin you down. Is it your position that it's a period of her conduct that controls or the term of the conspiracy? You know, Your Honor, that is an argument that wasn't addressed in the paper, and I can only be pinned down as not knowing exactly what the authority in that specific context says. So I'm sorry. You don't know the answer. I don't. I don't know the answer. Mr. Judge Hawkins, isn't conspiracy law generally in for a penny, in for a pound? I feel a bit like a bewildered law student here, but I'm sorry. I don't want to make a representation on the government and then find that I've misapplied the most basic conspiracy cases, so I can't say. One thing that you might be able to enlighten us on, doesn't this case come under the Real I.D. Act of 2005? It does, Your Honor. So that we should treat it as a petition for review, not as an appeal. The Court should. What practical effect, Your Honor? Does that make any difference? As I was about to know, Your Honor, it doesn't. This Court has in front of it all it needs that would have been part of the administrative record to decide the case, in our opinion. But on a broader view of it, are there cases where it would make a difference, whether you're looking at a petition for review or a habeas petition? There might be if the date of the con — if there were factual issues that were clearly in dispute about whether the conduct preceded the effective date of the statute, for example. If it really came down to that, then I think it would be important that the indictment, that those facts be part of the record. They happen to be part of the record here, and I think the Court can decide the question on the broader legal question, so I don't know that it matters. But I think the Court has before it all the operative facts. Well, I've been trying to puzzle through in what instances it would make a difference as to whether it was we were reviewing a petition for review or whether we were reviewing a petition for habeas. I think it would, in this particular context, it would depend on whether the facts, what facts are contained in the administrative record and whether those are the operative facts in the I.J.'s decision or the BIA's decision if they actually did more than summarily affirm. So if the I.J. relied on facts, I suppose this would come up more in the asylum-type context that are critical to the determination of credibility, perhaps, or to a determination of some kind of eligibility criteria for asylum, then it would be important to have the record so that all those facts were before the reviewing court. And if an excerpt of record, if it came up with just an excerpt of record that wasn't complete, then this Court wouldn't have the proper factual record for review. So I think that's where the point of distinction would lie. And practically speaking, this case doesn't really present the problem. But you're suggesting that we probably need to call for the administrative record when we get these cases. I think that in a more fact-intensive case, it would be preferable to do that. I think it, especially since the record contains more than just the opinion and sometimes more than the testimony but a lot of background information that wouldn't necessarily be in the excerpts. When it's what I perceive to be a clean legal issue is this one, then I don't think it matters. Thank you, Your Honors. Thank you, Counsel. Three quick points, Your Honors, and I'd be happy to address the question on Real ID afterwards if the Court wishes. On the indictment, there were multiple defendants, and that's why facts were alleged beyond the date of her particular activity. But we submit, Your Honor, that is the activity in her case. It's related to that. Do you have a case authority for that? Well, we think in terms of the retroactivity analysis that the Supreme Court's decision in Landgraf would control that. Your Honor is asking about whether or not she's liable for the actions of others in the conspiracy. She – her conduct, though, is what is relevant to the facts of the Landgraf analysis, and that's the difference. She may be – She pleaded guilty to the conspiracy which lasted through May 18, 1996. Correct, Your Honor, but her particular conduct is – She didn't plead guilty for her particular conduct to the conspiracy. She pleaded guilty to the indictment. That's not – And all the facts therein. Not disputed, Your Honor. That's not disputed. So we're not – we're not disputing that. No, but you're disputing the effect of it. We're saying, Your Honor, that under Landgraf and under Hughes, what's looked to is the – is the date of her conduct and when she engaged in that conduct, which was April 12th to 16th. But if she's still in the conspiracy after April 23rd and she pleads guilty to being in that conspiracy, doesn't that mean that she was in the conspiracy as an active co-conspirator beyond April 23rd? She had no conduct after April 12th. That's not what she pleaded to.  She pleaded to being a member of the conspiracy. That's correct, Your Honor. But you still look at the conduct under the Landgraf for the civil cases. Correct, Your Honor. And also, Your Honor, we would assert that the government's waived that argument. It was never raised by the government. It's beaten. We think that's waived by the government. Two other points, Your Honor. The government says that no court has talked – said there's no reliance necessary. At least three circuits have. The Fourth Circuit in Olentunji, the Third Circuit in Panopoulou, and the Eighth is not necessary to be shown. Lastly, even if reliance is needed to be shown, the issue in this case would be similar to that as the Second Circuit address in the Restrepo case. Here, no conviction was necessary. That is, because it was a drug offense, she was inadmissible from the time she committed the offense. All that's needed is reasonable suspicion on the part of the government to deem her inadmissible or an admission on her part. So there's no conviction needed. She was inadmissible at that time. Like Restrepo, gave up the right to apply for 212C at that time. I'd like to rest on that. If the Court wishes, I'd be happy to address Your Honor's question on real ID. We do agree that for this case, because it's a legal issue, no other record would be needed. But I think Your Honor's point about, in general, is CAR being needed would be appropriate. Thank you very much, counsel. Very interesting argument. Congratulations. All right. The case will be submitted. And we'll go to breakfast break. Let's take a break for the next 10 minutes, ladies and gentlemen. We'll stand at recess.
judges: B. Fletcher, Hawkins, Bea